Good afternoon, and may it please the Court. For almost a hundred years, not a single court before the Court of Federal Claims has even hinted that a government contractor can be personally liable, acting for the government, with the authorization and consent of the government. I submit there's a good reason for that, and that is it's inconsistent with the statutory text, with the policy behind Section 1498, and with the legislative history. And if you agree, I submit that the Court of Federal Claims should not have permitted amendment of ZOLTEK's complaint to assert a 271G claim, and should not have transferred the case to the Northern District of Georgia. Let me be more specific. Mr. Dunnard, let's cut right to the quick on some of these issues. We have a previous ZOLTEK opinion, four opinions in one case, which essentially stated that under 1498A, we had defined it to be coextensive under 271A. Is that a proper interpretation of 1498A? I don't think you answered that question, did you? You don't think I answered it? No. He asked you, is it a correct opinion? You said it's the law of the case. That's not the answer to the question. I thought I also added that Judge Giorgis' concurring opinion was a reasonable opinion. We're asking, is it correct? Your Honor, I don't have a view beyond that. As far as I'm concerned, it is governing, and even whether it's a correct opinion should not affect the outcome of this case. Based on NTP, in NTP, some of the method steps occurred outside the system steps. It was a system claim, not a method claim. But some of the system steps occurred outside the United States. We found infringement. You found infringement, as I recall, Your Honor, under the DECA rule, which was that the beneficial use was in the United States, and the control over the system was in the United States. The F-22 is used here. The benefit occurs here. Isn't the real problem with NTP, in addition to what Judge Rader points out, Judge Rader, is that NTP was not a 1498 case. It was a suit between two private organizations. 1498 had nothing to do with it. How could we have thought that NTP decided anything relevant to the original suit in this case? Judge Gios is really focusing in on a fundamental problem that I'm having, and I suspect my colleagues must be having from their questions, which is, how can it be that you are correct that Lockheed isn't liable if what we have is a case in which a valid, we have to presume valid, US patent has been infringed in several different ways. Perhaps we'll get into that later. And neither the government, nor Lockheed, nor anybody else can be held responsible for that. I mean, it seems to me, since if we're going to uphold the NTP analysis, what choice do we have but to hold your client as the responsible party? Your Honor, if the beneficial use was in the United States, as suggested by Judge Rader, then Lockheed Martin is totally immunized under, in other words, 1498C would not apply. If the use is United States use, then the arising in the United States aspect of the case would not apply, and Lockheed Martin would be immunized by 1498A. So that is our bottom line. No matter how you interpret NTP or whether or not 271A is incorporated, I suggest that the entire purpose of 1498A was to insulate government contractors from liability. That's only part of it, though. That's only part of it. The part of it that still bothers me is the fact that under 1498A, you might not need a separate cause of action to arise in the 271A. That 1498A creates a cause of action for a patent holder whose patent is used by or for the benefit of the government. You're saying that you might not need 271A? That's right. Well, I think that... Isn't that the language of the statute itself? That what we're looking at is a statutory provision which creates a cause of action, waives sovereign immunity by the United States and creates a cause of action on behalf of a patent holder whose patent, process or method or otherwise, is used by and for the benefit of the government. And also provides for an indemnification of the government contractor. Your Honor, I don't... Isn't that all together in one section? I believe you made that point in your concurring opinion, that 271A would not be necessary under the circumstances. I don't disagree with that analysis. All I'm saying is that whatever the analysis, Lockheed Martin is insulated by the immunity given by 1491A. And in answer to Judge Plager's point, the fact that somebody would go uncompensated, there are multiple cases where that has happened. It happened in Smith v. The United States, which is a Supreme Court case under the Federal Tort Claims Act. And the court found that even though the government was not liable, neither was the contractor. It happened in the TVI case where the court said the government might not be liable and yet the contractor was. Actually, there was never a holding about government liability in TVI, was there? I didn't hear that, Your Honor. Was there a holding in TVI about government liability? No. I know there was not. No, there was not. So we don't know whether the government was liable. Your argument on behalf of your client makes totally good sense in the case where we provide immunity for the contractor, clearly the statute provides for that, when there is liability assumed by the government. Had the government assumed its responsibility under 1498 of being the liable party, which is what 1498 declares, we wouldn't be here. But the government dodged its liability the first time around, and that left your client out to dry. And it's a puzzle to me how we can find non-liability on the part of the government, but at the same time, immunity for your client. This is a puzzle. Your Honor, it may be a puzzle, but that is the statutory scheme. The statute, there's nothing in the statute that says that. Your Honor. It's your version of the statutory scheme, if I'm not mistaken, Mr. Dunner, unless there's language in the statute that I've missed. And if so, please point me to it. 1498 basically says it came about from the 1910 and the 1918 Acts. The 1910 Act waived sovereign immunity. Then there was concern because of the Cramp and Sons case, where a government contractor was sued and they passed the 1918 Act. Richmond's crew has made it clear that that amendment was to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the government, and to limit the suits in the Court of Claims, which is now the Court of Federal Claims. There is nothing in 1498 which in any way suggests that the immunity to the government contractor is contingent on whether or not the government pays or does not pay. But there's nothing to suggest the contrary, is there? No, there is nothing to the contrary except that given the purpose, the dominating purpose of immunizing the government contractor, I submit it's unthinkable today to put a government contractor in a situation where it suddenly is liable for infringing a patent when it's working contracting for the government. And that is the entire scheme, the entire purpose of the statute. And the question is, is that scheme, is that purpose eliminated or overridden by 1498C, which is one of the questions, or overridden by 271G? And I suggest it's overridden by neither. And while it may be anomalous, as you say, that there will be no relief, I suggest that in TBI, while the government contractor was not found liable, the court said it doesn't make any difference whether the government is liable, the contractor is not liable. And in the Smith v. United States... That was not before the court, though, was it? It was an argument made, and that was its response. Smith v. United States has an almost parallel provision in the Federal Tort Claims Act where there was a government waiver, contractor immunity, and a provision that said you couldn't collect for acts abroad. And there was an act abroad, the government was held not liable, and the court found the contractor not liable at all. That's exactly a parallel scheme, and your puzzlement point could as well be made in that case as in this case. Now, Mr. Dunner, you talked about Richmond's screw. The Supreme Court in that case said we must presume that Congress, in the passage of the 1918 Act, intended to secure to the owner of the patent the exact equivalent of what it was taking away from him. Okay, if you're going to secure to the patent owner what it took away from him, and the government isn't liable, doesn't that mean Lockheed Martin has to be? Somebody's got to be liable, because the government's promising with the 1918 Act, and the Supreme Court is promising as well, that the patent owner's going to get what he has coming to him. No, Your Honor. Who gives the payment? That exact equivalent language was discussed in Judge Guiar's concurring opinion. It was discussed in Carr versus, I believe it was the United States, it was a Fourth Circuit opinion, and it was explained that that exact equivalent language does not cover the kind of situation you were talking about. There was a non-assignment provision. The patent issued before the Act of 1918. It was a 1917 patent. And there was a provision saying you could assign contracts to the government and to a private party. Where do we get the exact equivalent out of this factual situation, Mr. Gunner? The exact equivalent language was not intended to cover a situation such as this. It was intended to cover... I must presume that Congress, in the passage of the Act, intended to secure to the owner the exact equivalent. Now, where is that going to come from? And, Your Honor, you're assuming it means that there has to be compensation from somebody, either the government or the government contract. Have you got another meaning for it? Yes, the Court follows that, and Judge Biarsa followed it by saying that there's language right after that sentence which says the assignability of such claims was an important element in their value and a matter to be taken into account in providing for the just equivalent if Section 3477 applied. Such equivalence was impossible. It is not talking about there has to be compensation from somebody. It wasn't talking about that. And the Court was concerned that there was a vested right, because the right existed before the 1918 Act, and it was concerned about a possible takings problem in that situation. Here we're talking about a patent which issued well after the 1918 Act, so the same issue doesn't apply. What do you mean the same issue doesn't apply? The statute that was in effect when this patent issued not only included 271A, it also included 271G, which had been enacted in 1988, and it also included 154A, which had been enacted also in 1988. So all of those statutes were already included in the law when he got his patent and were part of the legal framework of 1498 at that time. So I'm puzzled as to why Judge Rader's equivalence point is not equally. It's true in the Screw case, the equivalence required them to deconstruct the assignability statute that happened to be passed in the middle of all of that. But in our case, we don't have that problem. We have a straightforward infringement problem. Your Honor, the simple answer is that argument was advanced by Judge Damich in his opinion and by Zoltek in his briefs. And the answer simply is that 271A, which was held in Zoltek 3, as we call it, the earlier Federal Circuit opinion, they said 271A was included in 1498A, and in fact 271A has things which came after the 1918 Act, such as importation, and yet the Court held there was immunity. Secondly, there's another point, and that is there's a general statutory interpretation rule that says if you have a general statute coming later, such as 154, which tracks the language of 271G, so it's really the same argument, the later general statute does not override an earlier specific statute. The earlier specific statute talking about government contractors and 271G and or 154A1 talking about a general body of people. All I'm saying is that the fact that there are later provisions doesn't mean anything in this case because that would be inconsistent with Zoltek 3, which is the law of the case. So I think that is an answer. We're, of course, free to reexamine the law of our own case, aren't we? Your Honor, under very restrictive conditions. It's got to involve an exceptional case, which is rare. It has to be an exceptional case if we felt it was necessary to provide a remedy provided by statute that would otherwise be frustrated. Your Honor, those issues came up in Zoltek 3. All of those issues were debated. Those issues are before us today, too. Answer the question. I didn't hear that last point. The issues are before us today as well. Would you please answer my question? Is it going to be an exceptional circumstance to enforce a remedy which would otherwise not be available to anyone? Your Honor, no is my succinct answer because the issues were exactly the same as those raised in Zoltek 3. The same arguments were made. 271G was not specifically involved, but Zoltek argued before the Court of Federal Claims that it would be without a remedy if the decision was made that it could not recover and that there would be a constitutional problem. That issue was raised directly in Zoltek 3, and I suggest that under law of the case, if you have the same arguments, the same issues, the same equities, that is not an exceptional case. And I say law of the case does not apply. I'm a little puzzled by your response, counsel. I'm very puzzled all the time. But I'm a little puzzled by your response because I would have thought on behalf of your client you would be delighted if we turned this around and pointed to where it belongs, which is in the lap of the government, which would clearly free up your client and give your client all the immunity your client could ask for. Your Honor? I'm puzzled by why you don't want to go there. I recall an argument I had some months ago. You made the same kind of statement, and I didn't accept your offer, which seemed at the time to be beneficial to my client. My answer is, if you want to hold, I mean, Mr. Gupta will defend the government, but if you want to hold, I'm representing Lockheed Martin. My goal is to have Lockheed Martin not culpable for any payment to Zoltek. If this court wants to hold that the government is liable and Lockheed Martin is not, then so be it. I will have done my job. But I was asked a question, as a matter of law, what do I feel? And it seems to me I should not be twisting my view of the law merely to help my client. Can I ask one final question? Excuse me. Let's turn to Judge Gaiard. Go ahead. Mr. Donner, we started off with the 1498A argument, and I think the aspects of whether or not that is coextensive, 271A and everything else, historically this all started off with DECA, Motorola, and the footnote adopting the 271 argument, and then NTP used the 1498 analysis, even though it was dicta. With respect to going back, as Judge Blager pointed out, if, in fact, this panel wanted to revisit the procurement of Zoltek, could we? If you want to revisit the issue raised in Zoltek 3? Could we do it? Well, the answer, Your Honor, is the answer I gave before. This is the same case. It's a different day, but it's the same case. The law of the case has some very strict guidelines as to when you can deviate from a prior holding in a case. And I mentioned those, and Judge Rader asked me directly, and I remember my answer was a direct no. He asked me, is that an exceptional case? That's my view, but you are the judges. I'm merely an advocate. Well, we're asking for your views on this as to whether or not it can be done. You're saying it can't be done. My view is it's the law of the case and that you should follow Zoltek 3. And the new issues that are raised in this case, 271G was not directly implicated in Zoltek 3, so obviously you may have a view on that. We've dealt with 271G extensively in our brief and pointed out why all of the arguments made in favor of 271G were not viable arguments and that all of the arguments made in favor of 1498C were not viable arguments. So as far as I'm concerned, Zoltek 3 helps us. But Judge Prager's point is if you revisit it, you may end up finding that the government is liable, that somebody is liable. Obviously, that would help my clients, so I cannot reject that gracious offer. Thank you, Mr. Jenner. Let's hear from Mr. Skupta. You kind of consumed your rebuttal time, but you'll get some back. Thank you, Your Honor. Good afternoon, Your Honor. Would you like to accept liability and make this easy for everyone? The problem there, Your Honor, is twofold. It's in part a matter of this Court's existing case law, but it's also just a matter of the text of the statute of 1498A itself. So the Court had asked Mr. Dunner several questions about whether Zoltek 3 was rightly decided. What in 1498A is the problem? The problem is that 1498A expressly waives the sovereign immunity of the United States only for claims of use or manufacture. Here we're talking about a process patent, so we're talking about use. And so the question is just has use within the meaning of 1498A taken place here? And the answer is no, and there are two ways to get to that answer. One path is the path that this Court took in the earlier iteration of the Zoltek case, and that wasn't merely crafting an answer out of whole cloth. It looked to the evolution of this Court's case law and in steps the fact that this Court has understood that there's only liability under 1498A when there's direct infringement within the meaning of 271A. So that raises the question of, well, what does that direct infringement mean? And this Court, in other cases, has held that direct infringement of a process means that all the steps of the process have to take place within the United States. So following through that path, this Court concluded that direct infringement as a matter of use had not taken place, and the United States couldn't be liable. Now, there's a second path that you can take to that same answer, even if we didn't have this Court's case law, and that was in part something that the judges in the original Zoltek panel had alluded to in their separate opinions, and that's the fact that 1498C places a territorial limitation on the sovereign immunity of the United States and provides that the waiver of sovereign immunity doesn't apply to claims arising in a foreign country. And so the question is, what does it mean for a use claim to arise in a foreign country? The judges on the Zoltek panel in separate opinions offered two different views on what that could mean. One view is that could mean— Where is the language in 1498A that says the use has to be in the United States? It doesn't come from 1498A, Your Honor. It comes from 1498C, the notion that for the United States to be liable, because we're talking about liability here in answer to the Court's question of contractor immunity, our position is that that's a separate and distinct question, and I'm happy to walk the Court through the textual reading that the United States believes supports the answer that there would be contractor immunity. But it's not in 1498A, as you suggested. Contractor immunity, Your Honor? No, that the use has to be in the United States. 1498C, so this Court in the previous Zoltek per curiam wrote the holding to be as a matter of 1498A, but there were separate explanations of how that could be explained in light of 1498C. So one view is that there is a territorial limitation implicitly incorporated into 1498A because of the understanding that the United States' liability should be broader than a private party. Here's the concern I have. The positions that have been taken have been the extremes. If one act occurs in Japan, the United States is not liable. If one act happens in the United States, Japan isn't liable. Importation is somehow going to be a substitute form of infringement regardless of where the steps happen. These are extreme positions. Why don't we look at it the same way NTP did and say where the benefit is in the United States and most of the acts are in the United States and there has to be some place where we grant a remedy according to the language in that Richmond Screw case, giving the patent owner their due. Why don't we just follow NTP and say that's here? If Your Honor is asking as a matter of the liability of the United States... Yes, I am, directly. The reason is because there are different considerations here. So in the NTP situation, we're talking about a lawsuit against a private party. Here we're talking about something that involves a waiver of sovereign immunity by the United States and this court and the Supreme Court, numerous other... So we'll just go ahead and hit Lockheed Martin and let you worry about it, right? Well, no, Your Honor, that would be... Because see if that happens, the United States is in trouble because its contractors will no longer trust you to immunize them. Well, Your Honor... So maybe that's the solution. Is that satisfactory to you? Absolutely not because that would be inconsistent with the purposes and policies of the statute. On the contrary, I've just given you an argument that makes it very consistent. There has to be liability somewhere. We're not going to take either your extreme view or the other side's extreme view. We're going to look where the benefit occurred and most of the steps. That's in the United States. Since you won't accept liability, it will go to Lockheed Martin, and I know that ultimately that hits you, which is where it should be. The difficulty with that, Your Honor, is that there's nothing in the statute itself that would provide that a contractor's immunity is conditioned on the liability of the United States. And so there's nothing in the statute or the policies. I mean, I think the foremost consideration is what Congress intended when it enacted this. 1498A, yes. It's clear that it intended to provide comprehensive immunity. The question is then, can the immunity here be found in the text of the statute? And if so, then it's the obligation of this court to read the text in a way that supports immunity because that's the only way that the bill would pass. But Richmond Screw doesn't make it quite that easy because the Supreme Court in Richmond Screw was concerned about two larger issues. One of them was the potential violation of the Fifth Amendment if the statute is not the set of statutes they had to deal with are not read as providing the proper remedy that the patentee was entitled to under the law. At the time, all of that arose. And the point that Judge Rader made so articulately, which is what about the requirement that there be equivalence between what the government picks up and what the contractor doesn't have to be held liable for any longer. It seems to me that the government's position in this situation is you want it all. You can't have it all. Because for you to have it all, the patents become useless. Your position is the government can be immune from liability. The contractors can be immune from liability. And the patentees hold pieces of paper that are of no value. But the statutes don't set it up that way. The statutes make patents a property right. And if they're a property right, they must have some value. And if they have value, they can't be infringed willy-nilly. So the government's place in this case was to do what 1498 says it has to do, shoulder the responsibility. It's stated otherwise. You rely on 1498C, which says these provisions shall not apply. If 1498 does not apply, then Lockheed Martin is not immunized. And we're right in the position I suggested to you earlier. Lockheed Martin picks up the bill, and ultimately you do. Because you've written 1498 out of the federal lexicon and left yourself with a bigger problem than you had in the beginning, right? Is there a problem with that reasoning? If 1498C says this doesn't apply, then it also doesn't immunize Lockheed Martin. Well, Your Honor, our earlier discussion about 1498C was within the context of the liability of the United States for a use claim. Here the allegation against Lockheed Martin is an importation claim. And for the reasons that we've explained in our brief, an importation claim by definition cannot arise overseas. So an importation claim, and the way 271G is framed, is that it has to involve the importation of the product into the United States. But see, that's why I went through my reasoning with you earlier. I'm making it a use claim under the NTP reasoning. The benefit's happening here. Most of the steps are happening here. It's a use claim. The C provision doesn't immunize Lockheed Martin. So we're back to where you and I differed a moment ago, aren't we? Well, Your Honor, but this is not a use claim against Lockheed Martin. It's a 271G importation claim. And Zoltec would not be able to bring 271A use claim against Lockheed Martin because of the very fact of the steps of the process being carried out outside the United States. Why don't we ask Mr. Jacobson that? Although I think Judge Gaillard would like to ask a question. But is your premise that 1498C is a waiver of sovereign immunity that cannot be taken outside of the United States? They can't waive sovereign immunity outside of the United States and did not do so under 1498C? So our position, Your Honor, is that 1498C is a limitation on the applicability of 1498A. So when we're talking about the liability of the United States for use, then we look to 1498C because such use has occurred here, occurred outside the United States. When we're talking about the— For which the United States did not waive its sovereign immunity for use outside of the United States. Correct. When we're talking about the immunity of the contractor, that's triggered by the language in the beginning of 1498A that says whenever use or manufacture by the United States is taking place. That doesn't contain any territorial limitation. So whenever use has taken place from the United States, then we follow to the next point. Then the owner has an exclusive remedy. That exclusive remedy is a suit against the United States for recovery for such use. And here that's exactly what happened. We understand that, but to answer Judge Guiars' question, let me help you hear it again. I think what he was asking is, is it your position that when 1498C applies, 1498A does not? Is that your position? Because 1498C says the provisions of this section, meaning 1498A, B, C, D, E, F, shall not apply to any claim arising in a foreign country. So if this claim arose in a foreign country, and as you know, I don't think it did, but that's a separate issue. I'll accept for the moment that it did for purposes of my question. If this claim arose in a foreign country, then 1498 section doesn't apply. Isn't that correct? Yes, Your Honor, and to be clear, the United States does not believe that this claim against Lockheed Martin did arise in a foreign country. Our understanding is that the importation claim against Lockheed Martin, by definition, had to arise within the U.S. because presence in the U.S. is an element of liability. If you take that away, then there would be no claim under 1793. In which case, the United States made use of the product that was imported, didn't it? The government made use of the product that was imported by using it in its airplanes, didn't it? There was use by the United States here. Of the imported product, right? That's one of the allegations, yes. I mean, isn't that so? Isn't that what happened? Isn't that what happened? My understanding is the allegations of the complaint, and yes, the allegations do allege that that was the case. In which case, 154A makes the government liable under 1498, doesn't it? Well, again, Your Honor, this Court has spelled out the conditions under which the United States can be liable for use, and the Court has made clear that the liability of the United States is not coextensive with the causes of action against a private party under 271 as a whole. That's the NPT ruling? Is that when you say this Court has made clear you're referring to the NPT ruling? Well, not just NTP, Your Honor, but earlier in DECA, this Court concluded that the United States couldn't be liable for contributory infringement. There are a number of types of... I want to see where we admit that. Thank you, Ms. Dasgupia. Is there something else, Mr. Harris? No. Thank you. Let's hear from Mr. Jacobson. Do you have anything to add, Mr. Jacobson? Yes, Your Honor. I have much to add, and I'm not sure where to start, so I'll just go down a point. Can I start someplace? Were all the steps of this process performed in Japan? The record reflects that for the F-22, the steps were prepared in Japan, and then the product was brought in and installed onto the aircraft. Okay. Proceed. Was that true of both of the fabrics? I don't... I thought it was true of only one of them. I believe one was completely manufactured in Japan. The other, the precursor material was produced and then brought in and woven in the United States. But the F-22 was all done in Japan and then imported into the U.S.? There were two separate fabrics for the F-22, Your Honor, and one for the B-2. B-2 was all in the United States. F-22, one was entirely in Japan. The second was the precursor, or the pre-reg, was done in Japan, and then some steps were done in the United States. Partially in Japan and partially in the U.S.? Yes, Your Honor. All right. So some of the claims may be use claims and others may be import claims. That's what you just told me. I'm not sure if I just told you that. Well, that's what I've heard. Okay. The way I've been analyzing this case, that's what I just heard. Well, to the extent that if some steps are used, are performed in the United States, and the benefit to the United States is use... Then importation. ...the product brought into the United States, we're talking about importation. Yes, Your Honor. If we've got a split in where the steps are performed, then we get into the analysis of where the benefit is and... Correct. ...which is the proper form for the United States or Japan and... Correct. You've heard that analysis. I've heard that. But that's a use claim. Yes. Well, let me go over a couple of quick points here before I get into the argument that I was anticipating. The quick point is first, law of the case does not apply here, Your Honor. Law of the case is binding on the lower court who has to follow your decisions. This is the same case. You're in the same court. Well, as a matter of general good policy, you don't reverse yourself in a subsequent appeal in the same case. You're not bound by law of the case. It's a slightly different concept. You have the ability to reconsider. The 271G claim... Do you mean if it's not an exceptional case? I think that if you reconsider it, it's probably an exceptional case. The fact that it's here a second interlocutory appeal with the interest this case has raised... What makes it extraordinary? We reached a judgment. We talked about all of these issues before. Why is it extraordinary? Well, it's extraordinary in the sense that there seems to be a general agreement that the overall policy of the United States is to immunize contractors. But the statutes as written and interpreted by this case provides for contractors in a very substantial type of contract to be on the hook, in the wind, and the government has, in fact, stepped back and refused to immunize. This has an impact on the overall policy of the United States established by Congress in passing 1498A, which was to affect the prompt procurement of materials. And so, because it affects the general important functioning of the United States itself, it can be considered extraordinary in that way. It goes for the same issues we talked about before. Yes, Your Honor. And I'm willing to abide by the decision you had before and tell you why you should affirm here without having to reconsider. Excuse me, I interrupted. I'm sorry. Going back to the issue of 1498A, if, in fact, we have so many different opinions, maybe it's up to Congress to change the language of the statute. I would agree, Your Honor. To make it clearer? I agree, Your Honor. I think Congress is the one that has to set the public policy. And I would suggest that there is a reasonable public policy here to view what has been referred to as times of legislative gap, which is Congress has, in this statute, indicated that if you practice a method patent in the United States, the government is immunizing you. The government is assuming liability, immunizing you. If you practice it outside, it isn't. Well, Congress has the right, I think, to make the decision that people who are receiving the taxpayers' money on the public fisc ought to spend their money practicing the invention in the United States if they want the United States to step in and immunize them. The ability to be immunized here was entirely within Lockheed's hands. They had the choice of either practicing the patent in the United States, infringing it themselves, or hiring a U.S. infringer to do it for them, or even hiring Zoltech, which was ready, willing, and able to practice its own patent in its own manufacturing plants in Missouri and Massachusetts if they chose to do so. They chose instead to go over to Japan, save some money, and they took the risk. As Orbach says, they put themselves at the risk that if the government wasn't immunizing them, they would be on the hook. When Lockheed tells you that in 100 years no one has ever decided something along this way, I say, well, look at 1987. In the Orbach case, District of Columbia Circuit, that was a copyright case, 1498B, but 1498B was passed to parallel 1498A, and in that case the court said, and I want to make sure I get the quote right there, the court says, private parties had best be certain that the government intends to shoulder liability for their wrongful acts. Absent authorization or consent, says the statute in plain terms, they proceed at their peril. Well, Lockheed here proceeded at their peril, and they certainly weren't surprised. It's not a theoretical choice on their part. They were involved in this case, as the opinion shows, back in 1997, providing discovery. They were aware of the lawsuit, aware of the patent, aware of the claims. They didn't begin manufacturing until the 2000s, so they had a position. They knew this case was pending. They knew there was a patent out there. They chose to manufacture outside and put themselves at their own risk of not being immunized by the United States government. Mr. Jacobson, that is a creative and very interesting argument, and I thank you for it. But it has one fundamental problem, which is the government, in dealing with national interest contracts, has to be able to contract with subcontractors, contractors, what have you, to undertake. The government doesn't build airplanes. The government hires people to build airplanes. The government doesn't purchase fabrics for the airplanes. It hires people to do all of that. You have to, as a simple matter of economics, you have to be able to say to those people, don't worry, you do our job the way we're telling you to do it, and you'll be protected. Your Honor, good points. They have to be. In your contract with the government, yes, you're getting to my question. In your contract with the government, either under the FAR or Federal Acquisition Regs, or in the particular contract that you had, did you not have a hold harmless clause? Your Honor, we don't know what was in Lockheed's contract. It's not been produced yet in this discovery in this case. This case is at a very early stage. We have no contract. You'd have to ask Lockheed what was in their contract. We don't know. But under the Federal Acquisition Regulations, subpart 27.2, there is specific language about what the contracting officer should or should not put in regarding immunity for patent infringements. And it says, in particular, this is the one that was in force at the time that Lockheed began doing the work, we believe, around 2001. There's been some minor changes, but not material. It says, the contracting officer shall not include in any solicitation or contract any authorization and consent clause when both complete performance and delivery are outside the United States, its possessions in Puerto Rico. So under the FAR, there's a particular regulation that says that if you're going to be practicing this contract and working on it outside and delivering to us outside, you're not going to get immunity. So there's not an open door that no matter what you do, you're getting immunity. It's announced ahead of time. You can come in and negotiate it if you want. Contracts are subject to negotiation, particularly large contracts like this one. But it's not a total blank state. Congress can make distinctions between different situations. You did not ascertain that set of questions because you haven't gotten that far. We haven't gotten it yet, no, Your Honor. We're 14 years into litigation, but we still haven't got the contract on Lockheed. You're just beginning. We are just beginning, Your Honor. We are just beginning. Mr. Jacobson, at that point, you've got a case pending in Georgia, right? Yes, sir. The district court? Yes, sir. Would it be just for you to get 14 years of damages against Lockheed Martin when no one expected that Lockheed was going to be liable until this court's earlier Zoltec opinion? Your Honor, we're not facing 14 years of damage. The suit in Georgia was filed shortly, about two weeks before the six-year anniversary of when they first started practicing it. So we have the six-year statute of limitations. It was filed there, I believe, two or three weeks before Judge Damage entered his opinion below in order to protect the company's position in order not to lose damages. So we have the six-year statute. We filed within six years of the commencement, and six years we're going back. So I don't think that's an issue, Your Honor. Now, let me ask you a question about the Northern District of Georgia case. Yes, Your Honor. You amended your complaint below to include 271G. Correct. And you were allowed to amend it. Now, does the court below have jurisdiction when it allows that amendment to take place? I believe it does, Your Honor. On what basis? Let me mention one other fact. The complaint in Georgia asserts Section 271 generally without particular reference to any subpart, but 271G is, in fact, the correct section. I think the judge below asked you specifically to include 271G. That's correct. But as I mentioned, the complaint in Georgia was filed before the judge issued that decision. And so to protect the company, we allege 271 just generally in the complaint. We expect that they, in fact, if the transfer is allowed and the two cases are consolidated, it will be 271G. But you filed a 271A before the transfer. 271A before the transfer? Did you file a 271 claim before the transfer? The sequence is the judge said file amended complaint adding Lockheed. The amended complaint was added saying 271. The judge said, no, you notice 271 in general is too broad. It's 271G. Refile 271G. That was done. The case in Georgia that filed in district court- Started off as a 271A. 271 hasn't been amended. It's been stayed while all this is going on. And I would expect that when the two cases come together, there will be a 271G case, Your Honor. Mr. Jacobson, here's a puzzle. Yes, Your Honor. Assuming the government should have been liable in this case- Yes. But assuming for whatever reasons we have immunized them, shouldn't Lockheed still be entitled to the immunity provided by 1498? Absolutely not, Your Honor. And there's a whole series of reasons why. First, their immunity comes out of 1498A. 1498A is a single statute, a single provision. As they refer to it, it's a coordinate immunity. It's the two sides of the coin. On the one hand, the government is stepping in. On the other hand, the contract is immunity. Steps out. And that was the hypothetical I gave you. The government steps in and properly should have. For reasons that at the moment we won't go into, it didn't work. But nevertheless, under the law, the government was liable. So Lockheed should be immunized. The government has taken a position from the beginning that they're not liable. They have not consented to liability. They filed a motion of summary judgment against it. Under Richmond's screw, we are left with not the equivalent of what we would have. We're left with just a piece of paper with no value. And this is an extremely valuable, innovative patent. And I would note that it's a method patent under the ancient case, but which you in your prior opinion said was still good-losh, Schillinger v. U.S. Schillinger says that the use of a method patent does not benefit the government. It only benefits the contractor because the product of the method is not patented and the contractor could have achieved the product by unpatented, open methods. And so what we have here is the skin, which is produced by a method. It is, in fact, possible to reproduce it using hit-and-miss methods, which would be very cumbersome, very expensive, very time-delayed. But it was to Lockheed's advantage to infringe the patent. The government is entitled to the skin made, the stealth skin that they ordered, regardless of what method Lockheed chose to do it. But are you saying then that the issue of some of the products which were all made in Japan and imported into the U.S. would not be subject to use by the U.S. because everything was performed outside of the United States? Your Honor, that is an interesting and difficult question. And the reason why it's interesting is in your prior decision in this case, this court found that there was no use within the meaning of 1498A. They found there was no use. And as the government has said repeatedly, Lockheed's work outside, this is a 271G importation claim. It's not a use claim. The government has now said several times again it's not a use claim. But 1498A only assumes liability to the government in the case of use or manufacture. Use or manufacture. All right? So if there's no use or manufacture, it's just an importation, then it's another reason why 1498A doesn't apply at all. And the immunity only comes out of 1498A. So if what you have is an importation claim under 271G against the contractor, it's importation. It's not use or manufacture within 1498A as defined by this court. Therefore, 1498A doesn't apply. No immunity. Why didn't you sue Lockheed to begin with and forget the government? Well, everyone thought that the government was liable in these kinds of cases, Your Honor. You know, your opinion was a surprise to us, and I think it's a surprise to the bars indicated by amicus briefs that were filed. I think based on the articles we've all seen afterwards, everyone was surprised. But we accept that is your decision. Do we think that was necessarily the right decision? No. But it's the law, and we move forward. The aerospace industry amicus brief, since you've raised the amicus briefs, suggests that 271G is as much a part of 1498A as is 271A. I would disagree with that. Why? 1498A speaks in terms of use or manufacture, and 271G is in terms of importation. I think that the different words that are used in the patent statutes have significant import. But their point is you are using the product that is imported under 271G. That is, the government used, made use, used the product imported under 271G. But this Court has said- Wouldn't that have been a cause of action for you? Well, I forgot which decision it was, but this Court has held in the past that infringement of a method patent involves the practice of the patent and not the use of the product. So once 271G- That was before 271G, wasn't it? Right. That was before 271G. Now you've got a statute. Right. But it doesn't make it use. It's making the importation offer for sale into the country, and it doesn't use the use language. So if use is what we're looking at in 1498A, and 271G is silent on use, it's hard to say how 271G is now somehow folded into 1498A, which is using a different term. By looking at 154A, you will see that the patent you got, which was after 1988, incorporates the rights under 154A, which means that your patent includes the right not to have a product made by your method- Imported into the country. Imported into the country. That is correct, and that's the valuable property right that we're trying to receive recovery for here. There are a couple of things I would say that I want to address with a little bit of time I have left here. Smith v. United States was not a contractor case, and the statutory language there was quite different than the statutory language we have here. Smith v. United States involved an employee, a federal employee, a doctor, and that was under the Federal Employees Liability Reform and Tort Compensation Act, which is tied to the Federal Tort Claim Act. The Liability Reform Act states that an action under the Federal Tort Claim Act is, quote, is exclusive of any other civil action against the employee and that all other actions against the employee are precluded. In addition, and in contrast to 1498A, the Liability Reform Act says that an action under FTC, quote, shall be subject to limitations and exceptions applicable to such actions. So your claims against, you know, if you bring under FTC. And Congress explained in the House Committee Reports, which are quoted in footnote 9 of Smith, that suits against, Congress explained in the House, that this means that suits against federal employees are precluded even where the U.S. has a defense which prevents actual recovery, end of quote. And that's in the House Committee Report. So there you have a statutory scheme which is quite different than we have in 1498A. We have language which is not two sides of a coin, but point to someone else and say, that section controls, you have no other relief, and you're subject to all the exceptions and restrictions there. And Congress especially, simply found that if you have no relief against government, you're out of luck. So if we want to talk about terms of absolute immunity, Smith shows us that Congress knows how to write a statute that gives absolute immunity when they intend to do so. And the language in those acts are quite different than 1498A. Richmond Screw is not simply about the assignment of patents. And I think that from the questions I've heard here, I believe the Court agrees with that perspective. In the TVI case, that's the case involving $500 worth of targets that were brought to the firing range at Fort Knox. And the Court says, no, you don't have a suit against the contractor, and we're not telling you whether or not you have a suit against the government. We don't care. You don't have a suit against the contractor. If someone wants to bring a claim for the royalties or the $500 worth of targets in front of the claims court, I suppose they have that right. It seems to be a de minimis type of infringement. To say that it's unthinkable that a government contractor would be left naked, I say Orbach. In Orbach, the government contractor was left naked. They used the copyrighted plans without permission. Government, federal government, refused to take liability. And the Court said, you proceed on the merits against the infringer. Let's see. Festo, pats of property. We've talked about that already. Let's see. Have you got questions for me, sir? I would be delighted to answer some more. Oh, so you don't have to answer questions that aren't asked. That's true. I would add that the Court's decision, prior decision, to the extent that it says 1498C eliminates all of 1498. And since it's a foreign thing, I agree with that. I believe that is sound. But one doesn't even have to go to Subsection C. Subsection A under this Court's prior decision says there's no use here. And if there's no use here, then there's no use for the government. Certainly, there's no acceptance by the government by their refusal to accept liability. And therefore, for all these reasons. I think the prior decision also said 1498A is not limited by geopolitical geography, is it? I believe it said 1498A. Well, there's all these different opinions there. I think your concurring opinion said that because that is the assumption of liability or waiver of sovereign immunity, you have to extend it as narrowly as possible. Therefore, the use has to be entirely within the United States. With all due respect, I think that where the Court, if it went wrong in the prior decision, was in treating 1498A as a waiver of sovereign immunity rather than as an assumption of liability in order to advance the interest of the United States in having contractors work. And that while one narrowly interprets waiver of sovereign immunity, I think when the government affirmatively says we're going to be liable for this, a different rule applies. If you don't waive sovereign immunity, how do you get into the Court of Claims? No, it's beyond – it's not simply a waiver of sovereign immunity. And there's a number of courts that say this is Congress assuming liability. And as I believe Judge Plager mentioned, it's not simply a jurisdictional statute. It's a statute that in fact creates the cause of action. It doesn't say you can sue the government now that we've waived liability under 271A. It says you can sue the government for these actions in the statute itself. But it's coupled. 1498A is a waiver of sovereign immunity coupled with a cause of action. That Judge Plager and I agree on. I agree with that. I might not agree on much – anything else. But I would suggest, Your Honor, that it's not merely a waiver of sovereign immunity. It's an actual assumption of liability. It's a cause of action. Right. Therefore, the idea of narrow interpretation probably is misplaced. But that is the law that as you all have declared in a prior decision. And under that law, the claims court properly applied your decision and properly found that Lockheed does not get the benefit of immunity when the government has not assumed liability. And therefore, the decision below should be affirmed, the transfer should be allowed to be forward, and that we should be allowed to hopefully bring this so far 15-year saga hopefully to a swifter end than might otherwise be. So for these reasons, I ask you to defer. Thank you, Mr. Jacobson. Mr. Dunner, you have three minutes. I'd like to address briefly a point you made, Judge Rader, during Ms. Descupta's argument. You asked if 1498 doesn't apply because of 1498C, then Lockheed Martin is not immunized. That was your question. The answer – I submit the answer is that is not so. 1498C is directed to claims arising in a foreign country. And it says 1498 won't apply to those. The only claims in 1498A are claims against the government. There is no claim against Lockheed Martin or any government contractor because government contractors are immunized by 1498A. If there's any doubt about that, it's clear from the evolution of 1498C. It was adopted simultaneously with 1498B, which extended the patent provisions of 1498A to copyrights under 1498B. And Congress was concerned that the government might be liable to a greater extent than private parties, and so adopted 1498C to protect the government, not to protect private parties. So I suggest that even if 1498C is or isn't applicable, it's applicable to the government and not to a private party. The last thing I'd like to mention – I'd just like to read something briefly from Richmond's proof. It says, moreover, we should seek to carry out in our dealing with the Act of 1918 and revised statutes 3477 the very important congressional purpose of the former, as already explained in the promotion of the war as a special legislative intent. It is our duty to give effect to that special intent, although it not be in harmony with a broad purpose manifested in a general statute avoiding assignment of claims against the government enacted some 80 years ago. Unless there are questions, Your Honor, that's it for me. Thank you, Mr. Gunner.